IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WILLIE CUMMINGS, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.                                         Case No. 1:22-cv-141-AW-HTC

BLUE DIAMOND GROWERS,

    Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

Blue Diamond sells smoke-flavored almonds that are not actually smoked. They come in a package that says "Smokehouse®," which Plaintiff Willie Cummings contends is misleading. ECF No. 1 ("Compl.") ¶¶ 1, 3. The principal issue in this case is whether Blue Diamond deceives consumers into thinking the almonds are actually smoked in an actual smokehouse. *Id.* ¶ 13; *see id.* ¶ 87.

Cummings bought some "Smokehouse®" almonds at a Gainesville store.[1] *Id.* ¶ 86. He thought they were smoked, and he was disappointed to later learn their flavor came from liquid smoke flavoring—not actual smoke. *Id.* ¶¶ 40-41 That disappointment led to this putative class action, in which Cummings seeks damages and injunctive relief. He alleges (1) a violation of the Florida Deceptive and Unfair

---

[1] At this stage, all well-pleaded facts are accepted as true and viewed in a light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

1

Trade Practices Act ("FDUTPA"); (2) violations of other state consumer-fraud laws; (3) breach of express and implied warranties, along with a Magnuson-Moss Warranty Act claim; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment.[2]

Blue Diamond now moves to dismiss for lack of jurisdiction and alternatively for failure to state a claim. ECF No. 13 ("MTD"). Having carefully considered the parties' papers, I have determined that Cummings has alleged sufficient facts to show standing (except to the extent he seeks prospective relief) but that he has not stated a claim for relief.

## I.

Because standing is a threshold jurisdictional issue, I address it first. "Here, at the motion-to-dismiss stage, a plaintiff must allege facts that, taken as true, 'plausibly' state that the elements of standing are met." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022) (citations omitted). Those elements are an injury in fact, causation, and redressability. *Id.* at

---

[2] Similar litigation challenging the Blue Diamond "Smokehouse®" label as deceptive is ongoing in other courts. *Clark v. Blue Diamond Growers*, No. 1:22-cv-1591 (N.D. Ill.); *Muller v. Blue Diamond Growers*, No. 4:22-cv-707 (E.D. Mo.). Motions to dismiss remain pending in *Clark* and *Muller*. The Southern District of New York granted in part a Blue Diamond motion to dismiss raising near-identical arguments as its motion here, *see Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021), and later granted summary judgment for Blue Diamond, 2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023).

1242 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). And because "[s]tanding is not dispensed in gross," a plaintiff must allege facts supporting standing "for each form of relief" sought. *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up) (citations omitted). As applicable here, that means Cummings can rely on past harm to pursue his damages claim, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 113 (1983), but needs "a real and immediate . . . threat of *future* injury" to have standing for injunctive relief, *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing *Lyons*). Here, Cummings plausibly alleges facts showing standing to pursue damages but not injunctive relief.

As for the damages claim, Cummings has pleaded enough to show injury, causation, and redressability. Consumers "experience[] an economic injury when, as a result of a deceptive act or an unfair practice," they are "deprived of the benefit of [the] bargain." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (citing *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016)). Cummings alleges facts showing that smoked almonds are worth more than unsmoked almonds with liquid smoke flavoring, *see* Compl. ¶¶ 52-61, a point Blue Diamond does not dispute. He then alleges that he thus paid a premium for the "Smokehouse" almonds. *Id.* ¶¶ 64-67. At this stage, that economic injury is enough. *Cf. Carriuolo*, 823 F.3d at 986-87 ("[A] manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically.").

Blue Diamond insists Cummings paid no premium because it sells its "Smokehouse" almonds for the same price as its unflavored almonds. MTD at 16-17.[3] But this misses the point. The question is whether Cummings paid more than he would have absent the representation, and he alleges he did. It does not matter that Blue Diamond chooses to sell its unflavored almonds for the same price as its "Smokehouse" variety.

Moreover, Blue Diamond relies on pricing information not contained in the complaint, MTD at 10-11—information I will not consider at this stage. Although courts can address fact-based jurisdictional arguments on a motion to dismiss, here the standing issue is inextricably intertwined with the merits, *see Carriuolo*, 823 F.3d at 986 ("FDUTPA recovery depends on whether plaintiffs paid a price premium . . . ."), so "the preferred procedure" is to defer the factual disputes until "a consideration of the merits," *Chatham Condo. Ass'ns v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990).

Blue Diamond also contests causation. It insists if Cummings paid a price premium, this was not fairly traceable to Blue Diamond's pricing practices but to retailers (like Walmart) that price competitor products. MTD at 19-20. But what

---

[3] Page citations are to the CM/ECF-assigned page numbers.

4

other retailers charge for other nuts is irrelevant. Cummings claims Blue Diamond made misrepresentations about the nuts he bought, so any price premium he paid is fairly traceable to Blue Diamond.

The last element—redressability—is the easiest. Blue Diamond does not challenge this one, and certainly a damages award would redress the economic injury. Cummings has standing to pursue his claims for damages.

Cummings does not, however, plausibly allege facts to show standing for his injunctive claims. He only says that he wants to buy the almonds again (if labeled truthfully or sold cheaper) and that he can no longer rely on *any* almond seller to truthfully label its products. Compl. ¶¶ 93-94. But Cummings's price-premium injury is entirely in the past. To the extent his injury is instead informational, he now knows of Blue Diamond's labeling practices and cannot be deceived by the "Smokehouse" almonds again. In short, his injunction request is nothing more than a "'stop me before I buy again' claim" insufficient to show a threat of immediate future harm. *In re Johnson & Johnson Powder Prods. Litig.*, 903 F.3d 278, 292-93 (3d Cir. 2018) (citing *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225 n.13 (3d Cir. 2012) ("Pleading a lack of self-restraint . . . will not typically invoke the jurisdiction of a federal court.")); *cf. Berni v. Barilla S.P.A.*, 964 F.3d 141, 147-48 (2d Cir. 2020) (reasoning similarly on Rule 23 posture).

Last, while Blue Diamond also argues Cummings lacks standing to allege violations of other states' consumer-fraud statutes, it suffices at this stage that Cummings has standing to pursue his own claims under Florida law (at least for damages).[4]

## II.

I now turn to the merits. Florida law governs (except as to Cummings's one federal claim), and where Florida law is unclear, I must decide the issues how the Florida Supreme Court likely would. *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118-19 (11th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[4] Most courts have rejected similar challenges as raising Rule 23 concerns "[u]nder the guise of standing," *In re Bayer Corp. Combination Aspirin Prods. & Mktg. Sales Practices Litig.*, 701 F. Supp. 2d 356, 376-77 (E.D.N.Y. 2010) ("[S]undry state law claims cannot be dismissed for lack of standing when there is no requirement that the named plaintiffs have standing to bring them."), and I find that authority persuasive here. *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) (reasoning that where resolution of certification issues "is logically antecedent to the existence of any Article III issues," a court may reach the certification issues first); 1 Newberg & Rubenstein on Class Actions § 2:2 (6th ed. Dec. 2022 update) (discussing the "growing consensus" that "any so-called 'standing' issues relating to the named plaintiff's pursuit of absent class members' claims are best considered in conjunction with the class certification motion"). Dismissing these claims prematurely "would in effect impose a requirement that . . . there be a named plaintiff from every state" in putative multistate class actions. *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1230-31 (S.D. Fla. 2015).

U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### A.

To state a FDUTPA claim, Cummings must allege facts showing "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (quoting *Carriuolo*, 823 F.3d at 985-86). Deceptiveness is viewed objectively: the inquiry is whether the challenged practice would deceive a reasonable consumer. *Id.* at 1098 (citing *Carriuolo*, 823 F.3d at 983-84). "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable

7

relying consumer.'" *Id.* (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Off. of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). And in gauging deceptiveness, the entire packaging's context is relevant. *See Hi-Tech Pharmaceuticals, Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018); *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1132-33 (S.D. Fla. 2021).

Cummings has not plausibly alleged deception. He relies almost entirely on Blue Diamond's use of the "Smokehouse" term. *See* ECF No. 19 ("Resp.") at 9-19. His claim thus depends on a conclusion that an objectively reasonable person would "likely" be deceived by the term "Smokehouse" into thinking the almonds are smoked rather than flavored otherwise. It is not enough to allege that Cummings or some others may *subjectively* feel deceived. *Cf. Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000) ("[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice . . . ."). And drawing on "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, I cannot conclude that an objectively reasonable consumer would likely be deceived. To be sure, the term "Smokehouse"—clearly used as a flavor indicator, *see* Compl. ¶¶ 1-2 (showing label)—evokes a smokey flavor. But it stops short of conveying (or likely conveying to a reasonable consumer) that an actual smoking process was involved.

The complaint includes some suggestion that the label's imagery—and not just the term "Smokehouse"—show deceptiveness. *See id.* ¶¶ 2, 29, 88. Cummings

notes red and orange coloring on the packaging. It is true, of course, that these colors are "evocative of fire," *id.* ¶¶ 2, 29, and that fire produces smoke. But this does not help nudge Cummings's claim "from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). It defies common sense to suggest that a product label's red or orange coloring inherently communicates to consumers that it was prepared with real smoke.

In short, the use of the "Smokehouse" term and other package imagery are insufficient to support Cummings's claim. But even if those features could support a claim in the abstract, there are other features of Blue Diamond's label that would undermine any suggestion of deceptiveness.

As Blue Diamond argues, "Smokehouse®" is qualified by the trademark symbol, and the label includes an ingredient list (which includes "NATURAL HICKORY SMOKE FLAVOR").[5] MTD at 23-27. The trademark symbol and ingredient list confirm it is implausible that objectively reasonable consumers would think the almonds were actually smoked. Just as an asterisk qualifies information on a label, *see Piescik*, 576 F. Supp. 3d at 1133, so does a trademark symbol by signaling information as a brand name. And as for the ingredient list, "[t]he presence

---

[5] These facts are set out in the complaint, which includes images of the front label and ingredient list, *see* Compl. ¶¶ 1, 41, so Blue Diamond's argument does not go beyond the complaint's four corners.

9

of true information" or disclaimers on a label "contribute[s] to the implausibility" of deception. *Id.* at 1133-34 (citing *Ebner v. Fresh*, 838 F.3d 958, 966 (9th Cir. 2016)). Indeed, Cummings's complaint concedes that "NATURAL HICKORY SMOKE FLAVOR," as mentioned on the list, refers to liquid smoke flavoring. Compl. ¶ 41.[6]

It is true that at least one court to consider the "Smokehouse®" label has held it was plausibly deceptive. In *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 580 (S.D.N.Y. 2021), the court found it "a close call" but declined to dismiss. While I agree that the issue is perhaps a close call, I respectfully disagree with the ultimate conclusion. Instead, I find this case more analogous to those in which courts have held there was no likelihood of deception. *See Piescik*, 576 F. Supp. 3d at 1132-34 (dismissing challenge to hand sanitizer label claiming the product "kills 99.99% of germs" because no reasonable consumer would actually think the product "kill[ed] 99.99% of all conceivable disease-causing microorganisms"); *Salters v. Beam Suntory, Inc.*, 2015 WL 2124939, at *2 (N.D. Fla. May 1, 2015) (same as to a bourbon label including the word "handmade").

In short, I will dismiss the FDUTPA damages claim for failure to state a claim.

---

[6] Blue Diamond also argues that the label's showing visible seasoning on the pictured almonds further undermines the claim of deception. MTD at 23-27. But seasoning almonds and preparing them with actual smoke are not mutually exclusive. Everyone knows that smoked almonds can be covered in salt or other seasoning just like non-smoked almonds can be.

10

**B.**

Cummings's warranty claims fare no better. Florida law mandates that a buyer, after discovering a breach of warranty, must notify the seller "within a reasonable time" thereafter. Fla. Stat. § 672.607. Notice is a "precondition of imposing liability on a seller." *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. 2d DCA 1980) (citing *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976)); *see also Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983).

Citing *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1323 (S.D. Fla. 2020), Cummings suggests that Blue Diamond, as the almond producer, is not a "seller" under § 672.607. Resp. at 16; *see also* Fla. Stat. § 672.103(1)(d) ("'Seller' means a person who sells or contracts to sell goods."). Florida state courts have not addressed that issue, and federal district courts applying Florida law are split. *Compare Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1362 (S.D. Fla. 2021) ("As [defendant] is the manufacturer not the seller, notice was not required under Florida law."), *with In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 225-28 (E.D. Mich. 2020) (discussing the split in authority, ultimately holding that "it is self-evident that [defendant], as the maker of the cars, did, at some point at least, 'sell' them to the intermediate dealers, who in turn sold them to the plaintiffs").

Cummings's reliance on *Toca* contradicts his own complaint, which alleges that Blue Diamond is a seller. Compl. ¶¶ 1, 114. Even if Cummings did not explicitly allege that fact, *In re FCA*'s interpretation is persuasive: it is self-evident from Cummings's complaint that, at some point, Blue Diamond sold the almonds (directly or indirectly) to the convenience store or contracted to sell them. Fla. Stat. § 672.103(1)(d); *see also Lamb v. Graco Child.'s Prods., Inc.*, 2012 WL 12871963, at *2 (N.D. Fla. Jan. 24, 2012) ("[Section 672.607] assumes privity. But even if, as the plaintiffs assert, an express warranty claim can be brought in the absence of privity, a buyer who is *not* in privity surely has no *greater* right than a buyer who *is* in privity.").

Notice given "must be evaluated from the perspective of the policies which it seeks to encourage." *T.J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 361 (5th Cir. 1980). Those policy goals include fostering compromise and enabling a seller to cure any problems, so as to minimize the buyer's loss and reduce the seller's liability. *Paramount Canning Co.*, 382 So. 2d at 1264; *Lamb*, 2012 WL 12871963, at *2. Timeliness is ordinarily a jury question. *See T.J. Stevenson & Co.*, 629 F.2d at 361; *E. Air Lines*, 532 F.2d at 973.

Here, Cummings claims that he provided Blue Diamond with notice *by filing this lawsuit* within thirty days of discovering the alleged breach. *See* Compl. ¶ 124; Resp. at 15-16. Yet as indicated above, "the whole point of the notice requirement

is to allow a defendant to cure the defect and thus to make good its warranty without a lawsuit." *Lamb v. Graco Child.'s Prods. Inc.*, 2012 WL 12874903, at *1-2 (N.D. Fla. Apr. 18, 2012); *see Paramount Canning Co.*, 382 So. 2d at 1264. Accordingly, notice by filing the complaint is legally insufficient. I will dismiss the express warranty claim on that ground.

I need not address whether notice is also a precondition to the implied warranty claims because those fail for an independent reason—Cummings does not allege privity with Blue Diamond. *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005); *see also Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005) (discussing how pleading a Magnuson-Moss Warranty Act claim does not displace state-law privity requirements). Instead, he bought the almonds at a convenience store. Compl. ¶ 86. While Cummings claims to be a third-party beneficiary who need not show privity, he does not allege facts supporting that status under Florida Statute § 672.318.[7]

---

[7] It is not clear whether any third-party beneficiary exception exists under Florida law outside of § 672.318, *see Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1118 (S.D. Fla. 2019); *Rife v. Newell Brands, Inc.*, 2022 WL 4598666, at *19 (S.D. Fla. Sept. 30, 2022), and Cummings cites no authority suggesting that one does. Even if Cummings could satisfy a third-party beneficiary exception, I would dismiss the implied warranty claims on plausibility grounds. He does not allege facts showing how any mislabeling rendered the almonds unfit for their ordinary use (consumption) or any other use peculiar to him. *See First New England Fin. Corp. v. Woffard*, 421 So. 2d 590, 596 n.10 (Fla. 5th DCA 1982).

13

Because Cummings failed to state a viable state-law warranty claim, I must also dismiss his Magnuson-Moss Warranty Act claim. *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) ("The MMWA depends on the existence of an underlying viable state-law warranty claim . . . .").

## C.

Blue Diamond next moves to dismiss Cummings's fraud and negligent-misrepresentation claims. It offers three grounds: (1) Cummings failed to allege a misstatement, (2) Florida's economic loss rule bars both claims, and (3) Cummings did not plausibly allege all elements of each claim. Both claims are subject to Rule 9(b)'s heightened pleading standard. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127-28 (11th Cir. 2019). And Rule 9 does not supplant Rule 8's plausibility requirement. *See Am. Dental Ass'n*, 605 F.3d at 1291; *Silverthorne v. Yeaman*, 668 F. App'x 354, 356 (11th Cir. 2016).

As already discussed as to the FDUTPA claim, Cummings failed to plausibly allege any misrepresentation. That failure is alone enough to dismiss the fraud and negligent misrepresentation claims. *See Howard v. Murray*, 184 So. 3d 1155, 1167 nn.22-23 (Fla. 1st DCA 2015) (citing *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011)) (noting that misrepresentation of fact is an element of both claims).

Moreover, even if Cummings plausibly alleged a misstatement, I would still dismiss.[8] First, as to both claims, Cummings had to plausibly allege Blue Diamond intended to induce reliance on a false representation. It is not enough to allege only that it had knowledge of falsity. *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984); *Howard*, 184 So. 3d at 1167 nn.22-23. He does not allege facts plausibly showing deceptive intent here; instead, he merely alleges that Blue Diamond knew "the [p]roduct was not consistent with its representations." Compl. ¶ 140; *see also id.* ¶¶ 62, 139. Even if Blue Diamond knew that its almonds were not smoked in a smokehouse—as it surely did—this does not automatically suggest it *intended* to induce reliance or deceive.

Separately, to the extent Cummings alleges deceptive omissions, *id.* ¶¶ 132, 137, he has not alleged a duty to disclose. "[O]missions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information." *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351-52 (S.D. Fla. 2005) (dismissing claims for failure to allege a duty, citing *TransPetrol Ltd. v. Radulovic*, 764 So. 2d 878, 880 (Fla. 4th

---

[8] It is doubtful that Florida's economic loss rule bars these claims. *See Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013) (limiting the rule's application to product liability disputes); *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996) (creating exception for fraud in the inducement).

15

DCA 2000)), *aff'd sub nom. Behrman v. Allstate Life Ins. Co.*, 178 F. App'x 862, 863 (11th Cir. 2006) ("agree[ing] with the district court's findings concerning [plaintiff]'s claims of negligent misrepresentation [and] fraudulent inducement"). That duty must arise from a confidential, contractual, or fiduciary relationship. *TransPetrol Ltd.*, 764 So. 2d at 880. Cummings alleges no facts suggesting he had a contractual or trust-based relationship with Blue Diamond. Instead, he offers only conclusory allegations that Blue Diamond is "the leading name in almonds" and thus has a fiduciary-like duty to be truthful about their contents. Compl. ¶¶ 130-32. That is insufficient. *See Colpitts*, 527 F. Supp. 3d at 587-88 (finding that similar allegations failed to plausibly allege a duty).

**D.**

Last, Blue Diamond moves to dismiss Cummings's unjust enrichment claim arguing that (1) it relies on the same facts as Cummings's legal claims and (2) Blue Diamond retained no benefit from Cummings because Cummings got almonds fit for consumption.

Blue Diamond is correct as to the no-benefit-conferred theory. To state an unjust enrichment claim, Cummings must allege that he *directly* conferred a benefit to Blue Diamond. *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). But, again, he does not allege that he bought the almonds from Blue Diamond directly. *See* Compl. ¶ 86; *cf. Marrache*, 17 F.4th at 1102 (dismissing unjust enrichment claim

because plaintiff conferred an *indirect* benefit to defendant manufacturer when he allegedly bought deceptive product at grocery store). So any benefit he conferred on Blue Diamond was indirect. That means the unjust enrichment claim fails.

## III.

Blue Diamond's motion to dismiss (ECF No. 13) is GRANTED. The complaint is DISMISSED. Although it appears unlikely that Cummings can cure the deficiencies with additional allegations, he will have leave to try. Cummings may file an amended complaint within fourteen days. If he does so, Blue Diamond will then have fourteen days to respond. If he does not, final judgment will enter and the class-certification motion will be denied as moot.

SO ORDERED on May 15, 2023.

s/ *Allen Winsor*  
United States District Judge